*196 OPINION OF THE COURT
Anthony R. Corso, J.
The defendant, Donald Gallagher, has been charged with driving while under the influence of alcohol pursuant to Vehicle and Traffic Law § 1192 (2) and (3). A pretrial suppression hearing was held before the court to determine whether or not the People would be permitted to introduce into evidence at the time of trial the result of the defendant’s blood alcohol content as determined by the Intoxilyzer 5000. Defendant has argued that such hearing was required because there is no authority that has established this instrument to be reliable, nor has it been judicially recognized by any appellate court that it is scientifically acceptable.
At the hearing, the People produced four expert witnesses as to the reliability of the breathalyzer used in this case and the admissibility of the results of tests administered with such instrument. Dr. Leo Dal Cortivo, chief toxicologist of the Suffolk County Medical Examiner’s office, testified as to tests performed on solutions of alcohol which corroborated the accuracy of the results found with the Intoxilyzer 5000. Mr. James Witter, director of engineering of CMI, Inc., the manufacturer of the Intoxilyzer 5000, explained each of the components of the device and how they worked to produce the test result. Dr. Arthur Flores, project director in the Office of Alcohol Countermeasures of the National Highway Traffic Safety Administration (NHTSA), testified that the Intoxilyzer 5000 met the standards developed by the National Bureau of Standards for NHTSA. Finally, Police Officer James McCarthy, supervisor in the Breath-Testing Unit of the Suffolk County Police Department, stated that he is certified by the New York State Department of Health as a technical supervisor, authorized to instruct others as to the operation, calibration and maintenance of the Intoxilyzer 5000.
It is to be noted that the Secretary of Transportation by the Highway Safety Act of 1966 was charged with the responsibility for developing a "broadly based alcohol countermeasure program” to reduce automobile accidents. In addition, as authorized by NHTSA, State and local governments were provided funding to purchase evidential breath-testing equipment. (See, Highway Safety Act, 23 USC §§ 402, 403, 408.)
The standards for the development of breath-testing capabilities as well as research to advance technology in this field were set forth by the Department of Transportation in conjunction with the National Bureau of Standards. (See, 38 Fed *197 Reg 30459.) Various manufacturers of these devices were invited by the National Bureau of Standards to submit their instruments for evaluation and testing which resulted in the approval of certain breath alcohol devices.
In 1982 the New York State Commissioner of Health was authorized to approve those instruments that were found qualified by the Department of Transportation and NHTSA and published in the Federal Register on March 4, 1982 and any subsequent revision. (See, 10 NYCRR 59.1 [c].) In 1983 the Department of Transportation and NHTSA found that the Intoxilyzer 5000 met the requirements which were published and listed in the Federal Register of December 14, 1984. (See, 49 Fed Reg 48854 et seq.) Therefore, by reference the New York State Department of Health also found that the instrument was qualified as a chemical test (see, 10 NYCRR 59.1 [c]).
Nevertheless, the Intoxilyzer 5000 was not included in the list of devices by the New York State Department of Health which were specifically found to comply with the four criteria for a breath-testing instrument found in 10 NYCRR 59.4 (a). (10 NYCRR 59.4 [b].) However, in a letter dated April 1, 1986 from the Department of Health, the Intoxilyzer 5000 was expressly found to be a qualified breath alcohol tester.
Based upon the findings of Department of Transportation/ NHTSA and the Department of Health, it is clear the Intoxilyzer 5000 has been accepted as a breath-testing device. (See, Vehicle and Traffic Law § 1194 [3] [c]; 10 NYCRR part 59.) Such a finding leads this court to conclude that the instrument meets the requirements with respect to the admissibility of evidence as derived from a scientific test. In Frye v United States (293 F 1013, 1014), the court stated that evidence derived from a scientific test is to be admitted for consideration by the trier of the facts if that process in question is "sufficiently established to have gained general acceptance in the particular field in which it belongs.” In the matter of People v Hughes (59 NY2d 523, 537), our Court of Appeals adapted and approved the standard, stating, "That rule, originally formulated in Frye v United States (293 F 1013), provides that scientific evidence will only be admitted at trial if the procedure and results are generally accepted as reliable in the scientific community.”
Although it may be said that the Intoxilyzer is the newest breath-testing device and has not been thoroughly litigated as the breathalyzer had been prior to its acceptance in People v *198 Donaldson (36 AD2d 37), the reasoning is the same: "[T]he Legislature has obviously determined that breath tests, if conducted in accordance with proper procedures, are scientifically reliable for determining the percentage of alcohol in the blood.” (See, People v Donaldson, supra, at p 40.) In addition, the Court of Appeals in People v Gower (42 NY2d 117), addressed itself to such devices: "Breathalyzer equipment and procedures have become familiar and their use is now commonplace. Reliability has been demonstrated and the results of such testing where properly performed are universally accepted * * * [T]hat there may now appropriately be some relaxation of the rigorous prerequisites properly required to authenticate the reliability of the scientific equipment and procedures where they were first employed. Based on a wealth of practical experience greater dependence can now properly be placed on according full opportunity, through pretrial discovery and other means, to test and challenge the probative worth of the evidence. Thus, emphasis may be shifted from technical issues of admissibility of evidence to means for measuring its persuasive weight * * * [t]o illustrate the perspective by extreme example, evidence of blood pressure readings and of electrocardiograms are generally received without detailed preliminary proof as to the scientific basis for reliability. Our experience with breathalyzers warrants at least some movement in the same direction.” (People v Gower, supra, at pp 121-122.)
Of course, this acceptance of the results of the Intoxilyzer 5000 is still subject to the People properly introducing a foundation for the admission of said results and that foundation is found in Vehicle and Traffic Law § 1194 or § 1194-a, that is:
1. Compliance with Vehicle and Traffic Law § 1194, i.e., that the defendant was under arrest; that the test was administered within two hours of arrest; and that the defendant was properly warned of the significance of taking the test or refusal.
2. That the breath analysis operator has a permit from the New York State Commissioner of Health (see, 10 NYCRR 59.7).
Since the Intoxilyzer 5000 is a qualified evidential breath-testing device, it is assumed to meet the criteria of 10 NYCRR 59.4 (a):
(1) The quantity of breath analyzed for its alcoholic content *199 shall be established only by direct volumetric measurement or by collection and analysis of a fixed breath volume.
(2) Breath specimens collected for analysis shall be essentially alveolar in composition.
(3) The instrument shall be capable of analyzing a suitable reference standard, the result of which analysis must agree with the reference standard value within the limits of plus or minus 0.01% weight per volume, or such limits as set by the State Commissioner of Health.
(4) The specificity of the procedure shall be adequate and appropriate for the analysis of breath specimens for the determination of alcoholic concentration in traffic law enforcement.
Additionally, the Intoxilyzer 5000 is preprogrammed and calibrated, eliminating the need for an operational checklist and the test sequence is predetermined. If the sequence is varied, interrupted or the test malfunctions, the instrument will automatically terminate the test. Finally, Vehicle and Traffic Law § 1194 (9) provides that if the test is performed by a person with a permit from the Department of Health, it shall be presumptive evidence that the examination was properly given. This presumption would also indicate that the techniques and methods found in 10 NYCRR 59.5 were followed.
The finding with respect to the admissibility of the results of the Intoxilyzer 5000 will be admissible into evidence as reliable. The defendant’s motion to suppress is denied.