OPINION OF THE COURT
Anthony R. Corso, J.
By a decision of this court dated May 15, 1986 and reported *718 in 132 Misc 2d 195, it was determined that the test results of the Intoxilyzer 5000 of the defendant’s blood alcohol content is to be admissible at the time of his trial. Subsequently, but prior to the trial, Dr. Leo Dal Cortivo of the Suffolk County Medical Examiner’s office became aware of a letter to the editors published in the Journal of Analytical Toxicology (vol 10, May/June 1986) which he considered to be of sufficient importance to question the accuracy and efficiency of the Intoxilyzer 5000. He notified the authorities in the District Attorney’s office. Those officials recognizing their obligations to provide a defendant with exculpatory material (Brady v Maryland, 373 US 83) notified defense counsel as well as this court. As a result a new hearing was held.
Dr. Dal Cortivo testified that the letter in essence provided the following information and conclusion: a 52-year-old cabinetmaker with a 20-year history of work-related exposure to paint thinners had been physically examined. A breath alcohol analysis was taken utilizing the Intoxilyzer 5000. The results of two tests on the instrument’s digital screen had a readout of the presence of alcohol (.369% and .273%) and an evidence card printout of .312 and the second card of .245 with the notation "interferent subtracted”. A blood specimen showed no presence of ethyl alcohol but showed the presence of acetone at the concentration of .026% (w/v). Gas chromatographic headspace analysis for volatile hydrocarbons, 28 days after collection, showed the presence of toluene. (Toluene is a chemical compound found in industrial solvents, paint, plastic and "TNT”.) The authors of the letter concluded that since the Intoxilyzer 5000 is capable of correcting for small amounts of acetone in the breath, it was unlikely that a significant portion of the evidence card results of apparent alcohol is attributable to acetone in the subject. (The Intoxilyzer uses an assumed blood-breath ratio for alcohol of 2100 pursuant to the Beer/Lambert Law.) The letter states that because toluene exhibits a blood-breath ratio that is 116 to 300 times less than that of alcohol and because toluene demonstrates significant infrared absorption at the 3.50+ .06 micron wave length used by the Intoxilyzer 5000, it was concluded that toluene caused the interference. The Intoxilyzer is an infrared type instrument in which infrared red light passes through a chamber of room air and a second chamber of the person’s breath. Any alcohol present in the subject’s breath will absorb the infrared energy at a wave length of 3.39 microns. There are other substances such as acetone that absorb energy at 3.39 mi *719 crons. The Intoxilyzer 5000 has the ability to detect and eliminate the acetone interference by the utilization of a filter. (The instrument has three filters at various wave lengths, 3.30, 3.48 and 3.80 microns.)
Therefore, since the letter indicates that the Intoxilyzer 5000 may give an incorrect reading by confusing toluene as alcohol, the issue of reliability was raised. Dr. Dal Cortivo testified that he performed various experiments which included a number of combinations of substances in a simulator consisting of acetone, toluene and alcohol. Although he was unaware of any other similar type experiments, he concluded that after his testing, the Intoxilyzer 5000 is a reliable instrument to measure blood alcohol content in an individual. Defendant’s position is that the accuracy of the Intoxilyzer 5000 is questionable. Defendant argues that there have been no tests performed on human subjects and Dr. Dal Cortivo’s experiment failed to explain away the results of the test as described within the letter.
At the outset, expert conclusions need not be asserted with certainty, so long as the witness demonstrates a degree of confidence of his conclusions sufficient to satisfy accepted standards of reliability (People v Brown, 67 NY2d 555; Matott v Ward, 48 NY2d 455, 459). The People’s witnesses’ testimony more than satisfied that criteria. In addition, as this court noted in its prior opinion, the guidelines as set forth in Frye v United States (293 F 1013) and People v Hughes (59 NY2d 523) had been met. One isolated, unsubstantiated experiment should not and is not sufficient to reject the acceptance by other authorities such as the New York State Commissioner of Health and the authorities of the United States Department of Transportation.
What does trouble this court is the decision subsequently decided by the Court of Appeals in People v Mertz (68 NY2d 136) as it pertains to the breath testing devices. This court must amend its prior opinion. The conclusion that Vehicle and Traffic Law § 1194 (9) provides that the test given by a person with a permit from the Department of Health is presumptive evidence that the examination was properly given must be modified to provide ”[i]t is * * * not a presumption which must be rebutted but rather an inference, like the inference of negligence denominated res ipsa loquitur.” (See, People v Mertz, supra, p 148.)
In People v Freeland (68 NY2d 699), also subsequently *720 decided, the Court of Appeals reversed a conviction based upon a breathalyzer test. The high court was presented "in this case with a record devoid of any evidence to support the conclusion that the testing device was capable of producing an accurate result.” (See, People v Freeland, supra, pp 700-701.) The court was considering the foundational requirements for the admission of breathalyzer results, i.e., whether or not the instrument was properly functioning and whether properly constituted chemicals were used and in the proper proportions. It is to be noted that with the Intoxilyzer 5000 no such question will be raised. The instrument, if, for any reason, malfunctions, will terminate the test.
It is further to be noted that a defendant, as in any case, has the right to impeach the accuracy of the reading of the instrument. " 'The defense is entitled to an expert witness instrument * * * Additional expert testimony, while available to the defendant, is not the only method of impeaching the reading * * * The State’s expert testimony may be controverted by the defendant testifying about the number of drinks he consumed and the effects of the alcohol upon him, he may call lay witnesses to testify as to those same factors, he may argue that the machine must be in error because of the slight effect the alcohol had upon him.’ ” (See, People v Mertz, supra, pp 145-146.)
This court, except as modified herein, must again deny defendant’s motion to suppress the introduction of the test results of the Intoxilyzer 5000. The motion for leave to re-argue is granted and, upon reargument, the court adheres to its prior opinion.
The trial is now scheduled for November 19, 1986.