OPINION OF THE COURT
Renee A. White, J.
The defendant was arraigned and charged with two counts of driving while intoxicated (Vehicle and Traffic Law § 1192 [2], [3]), unclassified misdemeanors. Within two hours of his arrest the defendant submitted to a breathalyzer test which indicated a blood alcohol content greater than .10 of 1% of alcohol. The defendant now moves pursuant to CPL 710.20 (5) to suppress and preclude the People from introducing the breathalyzer test result at trial on the grounds that the ampoule solution used to test the defendant was improperly prepared and that the integrity of the solution and its propriety for use in the breath testing cannot be established.
THE PARTIES’ CONTENTIONS
The basis of defendant’s motion is a report issued by the Auditor General of the State of Pennsylvania in December 1987. The report details the findings of an investigation of Systems Innovation, Inc. (hereinafter referred to as SII), which manufactures and supplies the ampoules and simulator solu *253 tion used in the breathalyzer tests administered in New York State.* The certificate of analysis of the breathalyzer ampoule used to test the defendant indicates that a sample of ampoules from lot numbers 0916 and 1027 were supplied to the New York State Police Crime Laboratory by SII. The arresting officer's report reflects that the ampoules used to test the defendant were from the same lot numbers 0916 and 1027.
In substance, the report contends that the procedures used in the preparation and manufacture of the ampoules as well as the simulator solution are sloppy, and the chemical composition of the product is not reliable. The Auditor General questions the lack of written procedures, the failure of the lab to use distilled water, and the failure to use USP certified ethyl alcohol. The report warns that by failing to comply with proper scientific procedures the credibility of the entire breath testing program is jeopardized.
Of particular importance, the report charges that inadequate records are kept which may permit "lot switching.” In theory, the ampoule solution is prepared in large quantities and given a numerical designation. The solution is then bottled into the individual glass ampoules, each containing the numerical designation of the original lot or vat. Samples taken from the same lot should be homogenous. The assumption is that a sample from a particular lot would necessarily reflect the composition of the entire lot. However, the defendant argues that because of the alleged inaccurate procedures utilized at SII, "[t]here is no way of knowing whether the samples sent to the State Police Lab reflect the quality and/or chemical composition of the ampoules contained in the bulk lot bearing the same lot number.”
The report concludes that "[t]he laboratory procedures being utilized at Systems Innovation, Inc. laboratory located in a back room of a Radio Shack Store in Hallstead, Pennsylvania do not meet national scientifically acceptable quality control standards. ” (1987 Report of Bureau of Investigations of Dept of Auditor General of State of Pa, at 3 [emphasis in original].)
In opposition to defendant’s motion to suppress, the People deny the factual allegations set forth by the defendant. The People uphold the integrity of the ampoules and simulator solution used in the prosecution of this case. In addition, the *254 People refer to the fact that the Attorney General of the State of Pennsylvania conducted its own investigation of SII and repudiated the findings of the Auditor General. In a letter to the Auditor General, dated November 2, 1988, the Attorney General wrote: "Your report concludes that test solutions provided by SII were 'flawed and totally unreliable.’ Based on our comprehensive investigation of this matter, we have concluded that the statement is erroneous and misleading. Our investigation confirms that the equipment and solutions being used in this Commonwealth are accurate.”
DISCUSSION AND APPLICABLE LAW
The issue the court must address is whether, in light of the report issued by the Auditor General of Pennsylvania, the breathalyzer test result is unreliable and therefore inadmissible.
The standard for admissibility of scientific evidence was established in the landmark case, Frye v United States (293 F 1013 [DC App 1923]). In Frye, the court ruled that scientific evidence will only be admitted at trial if the procedure and results are generally accepted as reliable in the scientific community. The. Frye standard was later applied to breathalyzer test results. (People v Donaldson, 36 AD2d 37 [4th Dept 1971].)
In Donaldson (supra, at 40) the court held: "[I]t is no longer necessary to require expert testimony to establish the general reliability of the machine. * * * [T]he time has come when we may recognize the general reliability of the Breathalyzer as a device for measuring the concentration of alcohol in the blood, and that it is not necessary to require expert testimony as to the nature, function or scientific principles underlying it”.
All elements of a proper foundation must be met to insure that the chemical test is accurate and reliable. It is well settled that prior to the admission of the breathalyzer test results, the People are required to lay a proper foundation from which the trier of facts could reasonably conclude that the testing device was in proper working condition, and that the chemicals used in conducting the test were of the proper kind and mixed in the proper proportions. (People v Alvarez, 70 NY2d 375 [1987]; People v Freeland, 68 NY2d 699 [1986]; People v Gower, 42 NY2d 117 [1977]; People v Todd, 38 NY2d 755; People v Donaldson, supra; People v Meikrantz, 77 Misc 2d 892 [Broome County Ct 1974].)
*255 In People v Ventafido (Cayuga County Ct, Mar. 14, 1988, index No. 3452), a suppression hearing was held on the exact issue presently before this court. After examining the integrity of the ampoules from lot number 0916 supplied by SII, the court ordered the suppression of the breathalyzer test stating that "[t]here could be no scientifically reliable result shown to the jury.” (Supra, at 3.)
The Ventafido holding, however, is not binding on this court. It is apparent that the court’s decision in that case primarily relied upon the report of the Auditor General of Pennsylvania. The results of the investigation of the Attorney General of Pennsylvania, which completely disavowed the findings in the report of the Auditor General, were not available until after that decision was rendered. Furthermore, an affidavit of Dr. Maurice Dutton, SII’s vice-president, states that the product "delivered to law enforcement agencies is from the same lot approved by state certifying authorities.” Additionally, the affidavit of Robert W. Horn, Director of the Police Crime Laboratory System, indicates that random ampoules from lot 0916 and simulator solution in lots 1027, 0698 and 0828 have been recently tested and meet the accepted standards.
After a review of the motion papers, including the exhibits and affidavits, the court is not persuaded that the ampoule solution used to test the defendant was improperly prepared, thereby rendering the breathalyzer test inadmissible at trial. In order for the court to summarily grant defendant’s motion to suppress, the papers must state the ground of the motion, contain sworn allegations of fact and the People must concede the truth of these allegations. (CPL 710.60 [2].) The People, as well as the Attorney General of Pennsylvania, vehemently contest the allegations contained in the report of the Auditor General. Clearly, defendant’s submissions fail to require a determination that the People cannot establish the integrity and proper composition of the ampoule used to test the defendant. Accordingly, defendant’s motion to suppress is denied.
However, the defendant has raised substantial questions regarding the admissibility of this evidence. Furthermore, the court finds that to leave this matter for trial would result in substantial prejudice to the defendant. In People v Cruz (134 Misc 2d 115 [Crim Ct, NY County 1986]), the court held that a defendant is entitled to a pretrial hearing on the admissibility *256 of his refusal to submit to a breathalyzer. The court determined that a ruling made at trial would be prejudicial to the defendant as the People would be allowed to comment on the defendant’s refusal in their opening statement. The court reasoned that "[o]nce the jury is made aware of this evidence, the damage is done regardless of whether the prosecution is permitted to introduce the evidence at trial.” (Supra, at 117.)
Similarly, under our facts, a pretrial hearing on the admissibility of the breathalyzer is the appropriate method to resolve the issues here. At trial, the People are required to make an opening statement outlining the elements of the crimes charged and how they intend to prove their case. Although the court will instruct the jury that opening statements are not evidence, the jury will learn of the People’s intention to prove that defendant had a blood alcohol content over the statutory limit. Furthermore, during the course of the trial, once the People begin to lay the proper foundation for the admission of the breathalyzer, the jury will certainly suspect that the defendant not only took the test, but that the results were not favorable. This is so even if the foundation was subsequently found insufficient and the breathalyzer test precluded. However, the jury would have heard the opening statement and preliminary testimony. Although curative instructions would be given, the verdict could thereby be influenced.
Additionally, as a practical matter a pretrial hearing is necessary. To select a jury and commence the trial only to later determine that the charge (Vehicle and Traffic Law § 1192 [2]) would ultimately fall for failure to establish a necessary element would be a wasteful use of limited judicial resources.
In similar situations pretrial hearings on evidentiary rulings have been conducted. (See, People v Tunstall, 63 NY2d 1 [1984] [reliability of witness’s prehypnotic recollection], on remand 133 Misc 2d 640 [Sup Ct, Richmond County 1986]; People v Sandoval, 34 NY2d 371 [1974] [scope of cross-examination regarding defendant’s prior criminal convictions or bad acts]; People v Gallagher, 132 Misc 2d 195 [Dist Ct, Suffolk County 1986], on rearg 133 Misc 2d 717 [Dist Ct, Suffolk County 1986] [effect of a report appearing in the Journal of Analytical Toxicology on the reliability of the Intoxilyzer 5000]; People v Tilley, 120 Misc 2d 1040 [Erie County Ct 1983]; People v Hochheimer, 119 Misc 2d 344 [Sup Ct, Monroe County 1983] [effect of radio frequency interference on the breath *257 alyzer machine]; People v Delia, 105 Misc 2d 483 [Onondaga County Ct 1980] [admissibility of defendant’s refusal to submit to a breathalyzer test].)
In conclusion, the defendant’s motion goes beyond mere speculation, and asserts factual allegations sufficient to warrant a pretrial suppression hearing (CPL 710.60 [3]; People v Allweiss, 48 NY2d 40 [1979]). Issues of fact on a question necessary to establish the proper foundation for admissibility of the breathalyzer can only be resolved by a fact-finding hearing. "Where issues of fact relative to a legal basis for suppression are raised, the court has only one recourse. It must conduct a hearing.” (People v Hernandez, 124 Misc 2d 840, 847 [Sup Ct, Kings County 1984].)
SCOPE OF HEARING
This hearing will be conducted by the Trial Judge prior to jury selection. The court finds that the burden of proof at this hearing will be initially on the People to establish by clear and convincing evidence the necessary foundation to warrant the admission of the breathalyzer test. (People v Tunstall, supra.) Specifically, the People must show that the chemicals used to test the defendant were of proper kind and mixed in the proper proportions. However, the defendant bears the ultimate burden of proving that the evidence should not be used against him. (People v Berrios, 28 NY2d 361, 367 [1971].)

 As a result of this report SII has initiated (in Federal court in Pennsylvania) a civil rights suit against Auditor General Don Bailey for defamation. (Systems Innovation v Bailey, US Dist Ct, MD Pa 1988, Nos. 88-5091, 88-5113.)