OPINION OF THE COURT
Eli Lazarus, J.
The defendant, Lucio Amores, is charged with driving while under the influence of alcohol, violations of Vehicle and Traffic Law § 1192 (2) and § 1192 (3). His motion pursuant to CPL 710.20 (3) and 710.40 for suppression of statements, or in the alternative, directing that a hearing be held as to the admissibility of such statements is granted to the extent that a Huntley hearing will be conducted. His motion pursuant to CPL 710.20 (5) directing the suppression of breath test results, or alternatively, dismissal of the charge as facially insufficient pursuant to CPL 100.40 and 170.30 is denied for the following reasons:
I
BREATH TO BLOOD CONVERSION RATIO
The first branch of defendant’s motion to suppress the results of the breathalyzer test rests upon the proposition that the amount of alcohol in the breath may be an overestimation of the amount of alcohol in the blood. Defendant contends that since Vehicle and Traffic Law § 1192 (2) liability is for the level of alcohol in the blood, he should be given the benefit of any possibility of an overestimated blood alcohol reading.
Although defendant raises this issue, neither the defense nor the People address the issue in any detail in their motion papers. As a result, the court has conducted its own independent research and relies upon the studies of researchers in the field as they were reported in Erwin, Defense of Drunk Driving Cases § 1802 (3d ed 1989).
To convert the percentage of alcohol in the breath (BAG) *529 into a percentage of alcohol in the blood (BAG), a factor of 2,100 to 1 is used. This is based on the theory that approximately 2,100 milliliters of breath would contain the same quantity of alcohol as one milliliter of blood. The 2,100:1 conversion ratio is an average for the population-at-large. As with any other average, this ratio is based upon the cumulative ratios of a population sample divided by the members of the population. Thus some members of the population will have a higher than average ratio, while others will have a lower than average ratio. To be a statistically reliable predictor, most members of the population must fall on or close to the average. For those individuals with lower than average ratios, their BAG will be overstated. Therefore, it is critical that the average does not overestimate BAG levels for a large number of the population, and that the overestimate is not statistically significant.
One recent study[1] indicates that the actual average conversion ratio for the population is 2,280:1;[2] the standard deviation from the average is + 241.5; and the range of ratios is estimated at 1,100:1 to 3,400:1. As a result, 68% of the population will have a ratio greater than 2,038.5:1; 95% of the population will have a ratio greater than 1,797:1; 99.7% of the population will have a ratio greater than 1,555.5:1; and 0% to a maximum 0.3% of the population will have a ratio which falls between 1,100:1 to 1,555.5:1.[3]
Applying this data to the defendant’s estimated BAG of .16% yields the following probabilities: defendant has a 68% probability that his BAG was greater than .155%; a 95% probability of greater than .137%; a 99.7% probability of *530 greater than .119%; and a 0% to 0.3% probability that his BAG ranged somewhere between .084% and .119%.[4]
Thus, there is a possibility that anywhere from 0 to 3 people in 1,000 who register a .16% breathalyzer reading would have a blood alcohol concentration below the .10% limit specified by Vehicle and Traffic Law § 1192 (2). This court must therefore decide whether this statistical probability of unreliability of less than 3 chances in 1,000 is sufficient to declare the breathalyzer results unreliable and inadmissible. I conclude that the point raised by defendant is really an issue for trial which may be used to attack the burden of proof required of the People, but is not adequate reason to declare the breathalyzer result unreliable. To hold otherwise would necessitate ignoring the Court of Appeals clear and well-settled declaration that the breathalyzer is a scientifically reliable instrument capable of producing an accurate measurement of a suspect’s blood alcohol content (People v Alvarez, 70 NY2d 375, 380; People v Mertz, 68 NY2d 136, 148; People v Freeland, 68 NY2d 699; People v Gower, 42 NY2d 117).
Further, a breathalyzer reading above the statutory limit is not a per se violation but is merely presumptive evidence which permits but does not require the trier of fact to find in accordance with the presumed fact (People v Mertz, supra). Thus, the court has recognized an allowance for error in breathalyzer results, and has given the defendant the benefit of that allowance. It is because of this, proof of a breathalyzer reading of .10% or more alone is not enough to establish a prima facie violation of Vehicle and Traffic Law § 1192 (2) but must be combined with other indicia of intoxication (supra). Accordingly, this branch of defendant’s motion is denied.
*531 II
INTEGRITY OF THE CHEMICAL SOLUTION
The second branch of defendant’s motion to suppress breathalyzer results rests upon allegations that the chemical solutions used in breathalyzer machines in New York are currently the subject of scrutiny. This allegation rests upon the findings of a 100-page report from the Office of Investigations, Department of the Auditor General, Commonwealth of Pennsylvania entitled, "Allegations Concerning False Billing; Educational Systems, Inc.” Educational Systems, Inc. is a division of Systems Innovations Inc. (hereinafter SII). Although the bulk of the report deals with the bidding process, billing procedures and service problems that the Commonwealth of Pennsylvania has experienced with SII, the report also raises serious questions regarding the integrity of some chemical solutions which may be in use in New York. The defense alleges that because of the Pennsylvania findings, there can be no presumption of consistency between any batch of solutions. Thus, their use casts a cloud of unreliability over the test results. The issue presented is whether these allegations of unreliability are adequate grounds to move for pretrial suppression.
To begin with, the defendant does not meet his threshold burden under CPL 710.60. By statute, a pretrial hearing may be granted only where the motion papers contain sworn allegations of fact supporting the grounds for the motion. Although the defendant’s papers allege some solutions have come under scrutiny, this speculation is not enough to support the proposition that the solution used in defendant’s test was unreliable (see, People v Garneau, 120 AD2d 112).
Moreover, a motion pursuant to CPL 710.20 is misapplied. There are six specific statutory grounds for pretrial suppression of evidence encompassed by CPL article 710. An allegation that breathalyzer test results may be unreliable is not one of these six grounds (People v Hicks, 134 Misc 2d 594; People v Tyree, 75 Misc 2d 912; see also, People v Pantaleo, 141 Misc 2d 251), but such allegations may be made at trial to attack the proper foundation the People must present before the evidence may be admitted or to contest the inference that the test results are accurate (see, People v Freeland, 68 NY2d 699, supra; People v Mertz, 68 NY2d 136, supra).
Despite these legislative confines, some courts have held *532 pretrial suppression hearings upon constitutional grounds that the conditions of the test violated due process principles. For example, lower courts have conducted hearings and suppressed test results for failure to preserve sample ampoules or for failure to provide counsel prior to defendant’s waiver to refuse to take tests. However, the Court of Appeals has reversed such suppression on various grounds (see, People v Alvarez, 70 NY2d 375, supra; People v Shaw, 72 NY2d 1032; People v Shepherd, 118 Misc 2d 365, affd 130 Misc 2d 284, revd 68 NY2d 841).
Recently, the court in People v Pantaleo (supra), responding to the identical issue presented before this court, denied a CPL article 710 suppression hearing but ordered a hearing on the admissibility of evidence be conducted by the Trial Judge prior to jury selection. The court found such a hearing necessary to eliminate prejudice a defendant would encounter when the People in their opening statement refer to breathalyzer tests results that may later prove to be inadmissible. Following Pantaleo where extensive pretrial evidentiary hearings have been conducted, opposite conclusions have been reached possibly due to the difference in the allocations of burdens of proof. One court held the breathalyzer result admissible (People v Urquhart, Rochester City Ct, Jan. 23, 1989, Walz, J., docket No. 8801463), while a second court concluded that one document normally used to lay a proper foundation for admission of the breathalyzer (certificate of analysis of ampoule solution) may not be allowed into evidence because the People were unable to prove it competent beyond a preponderance of the evidence (People v Serrano, 142 Misc 2d 1087).
However, this court does not agree that a hearing is required to determine the admissibility of breathalyzer results. Whether or not breathalyzer results are admitted into evidence, the People will still be required to allege and prove every element of the offense charged, including the fact that defendant’s blood alcohol level was over the statutory limit (see, Vehicle and Traffic Law § 1192 [2]). If the breathalyzer results are not admitted for lack of proper foundation, the defendant may move for a trial order of dismissal of the Vehicle and Traffic Law § 1192 (2) charge. (People v Schneider, 129 Misc 2d 674.)
Furthermore, although erroneous admission of breathalyzer results may taint the convictions for violations of subdivisions (1) and (3) of section 1192 of the Vehicle and Traffic Law depending on the weight of the independent evidence (People v *533 Gower, 42 NY2d 117, supra), it does not necessarily follow that the prosecutor’s reference to a breathalyzer test that is later found to be inadmissible will also taint these charges. This court sees no reason why a charge to the jury, combined with the evidence before the jury regarding the unreliability of the test results, would not eliminate possible prejudice.
In reaching its conclusion, this court relies upon the Court of Appeals decision in People v Alvarez (70 NY2d 375, supra). In Alvarez, the court adopted the reasoning of the Supreme Court in California v Trombetta (467 US 479), which rests upon two propositions: "first, that the breathalyzer test is accurate, and second, that a defendant at trial can adequately explore malfunctions caused by faulty calibration, radio wave interference, contamination of the sample by foreign objects, or operator error by examining the machine, reviewing calibration and similar records, and questioning the officer who administered the test” (People v Alvarez, supra, at 380, citing California v Trombetta, supra). Thus, the proper avenue for contesting the accuracy of the test results is during trial before the trier of fact.
At any rate, ordering a pretrial suppression hearing to determine aspects of admissibility of breathalyzer evidence will not eliminate the requirement at trial to lay a proper foundation before admission. The People must introduce evidence at trial from which the trier of fact could reasonably conclude the testing device was in proper working order, that the tests were properly performed and universally accepted (People v Freeland, 68 NY2d 699, supra; People v Mertz, 68 NY2d 136, supra; People v Gower, 42 NY2d 117, supra). Accordingly, the motion to suppress is denied without prejudice to the defendant to renew his objection at the time of trial.
FACIAL SUFFICIENCY
Defendant also moves for dismissal of the charge. Defendant argues that because the breathalyzer result may be suspect, the complaint articulating the results of defendant’s test may not provide reasonable cause or prima facie case requirements specified by CPL 100.15 and 100.40.
However, the Court of Appeals has concluded that proof of a breathalyzer reading of .10% or more within two hours after arrest together with other evidence of defendant’s deportment is enough to establish a prima facie violation suffi *534 dent to sustain a conviction, so long as defendant is permitted to argue the significance of contrary evidence that the breathalyzer results may not be believable. (People v Mertz, 68 NY2d, supra, at 146.) The complaint in the instant action alleges all the required elements. As with any other facially sufficient complaint, the defendant may at trial contest the accuracy and reliability of the accusations. The motion is denied.

. (Simpson, Accuracy and Precision of Breath Alcohol Measurement for a Random Subject in the Post-Absorptive State, 33 Clinical Chemical 261-268 [1987].) The court relies on this study, based on a population of 393 adults since the standard deviation is estimated to be greater than in other studies. Thus the defense position is better stated.

. The lower ratio of 2,100:1 is in use as an average because it overestimates the BAG of a smaller percentage of the population rather than 50% of the population.

. Simpson’s calculations are apparently based upon the empirical rule used in statistical analysis which is defined as follows: "Given a distribution of measurements that is approximately bell-shaped, the interval plus or minus one standard deviation from the mean (or average) contains approximately 68% of the measurements, plus a minus two standard deviations from the mean contains approximately 95% of the measurements, and plus or minus three standard deviation from the mean contains all or almost all of the measurements” (Mendenhall & Reinmuth, Statistics for Management and Economics, at 56 [3d ed 1978]).

. Calculations are as follows:
actual ratio X Estimated BAG = Actual BAG
average ratio
or 2,035.5 X .16% .155%
2,100
1,797 X .16% .137%
2,100
1,555.5 X .16% .119%
2,100
1,100 X .16% .084%
2,100