OPINION OF THE COURT
Per Curiam.
Order entered January 6,1984 reversed, on the law, charge of operating a motor vehicle while having .10 of 1% or more by weight of alcohol in defendant’s blood reinstated, and case remanded to Criminal Court for further proceedings.
On December 2,1983, at about 4:00 a.m., a car operated by the defendant struck a concrete abutment at the Whitestone Bridge toll plaza. The police officer summoned to the scene noticed that defendant’s eyes were watery and bloodshot, his speech was slurred, and that his breath smelled of alcohol. Defendant was arrested and thereupon taken to a police testing facility located on the Bronx River Parkway, where a breath test was administered using a Smith & Wesson Model 900A breathalyzer ma *639 chine.[1] The test, given by a certified operator in the presence of the arresting officer, indicated a blood alcohol content of .21%. In keeping with routine procedures, the police did not retain the test ampoule used in administering the breathalyzer test, nor did they collect or save a separate sample of defendant’s breath.
Defendant was charged, inter alia, with driving while having .10 of 1% or more by weight of alcohol in his blood, in violation of Vehicle and Traffic Law § 1192 (2). Defendant moved to suppress the results of the breathalyzer test, on the ground that the government’s failure to preserve a breath sample for independent testing constituted a denial of his right to due process. After a hearing, Criminal Court granted defendant’s suppression motion. Because the suppressed breath test results were a necessary predicate for a conviction under Vehicle and Traffic Law § 1192 (2) (see, People v Snyder, 90 AD2d 894), the trial court dismissed so much of the information as charged a violation of that section. The People appeal.
Subsequent to the order below, the United States Supreme Court held that the failure to preserve breath samples for testing by a defendant does not constitute a violation of the Federal Constitution (California v Trombetta, 467 US_, 104 S Ct 2528 [1984]). In so holding, the court rejected the argument, raised by the defendant herein, that the failure to preserve breath samples is a circumvention of the disclosure standards established by Brady v Maryland (373 US 83 [1963]) and its progeny, which require the prosecution to preserve evidence that is both exculpatory to the defendant and material either to guilt or punishment. In the court’s view, breath sample evidence meets neither condition of the Brady test. As to the exculpatory value of such evidence, the court, after satisfying itself of the reliability of the breath testing machine and procedures used in California, stated that the chances were “extremely low” that a breath sample, if preserved, would prove to be exculpatory. “Once the [testing device] indicated that respondents were legally drunk, breath samples were much more likely to provide inculpatory than exculpatory evidence.” (California v Trombetta, supra, p _, p 2534.) The court further observed that breath samples were not material in the constitutional sense, since a defendant, even without access to such evidence, may successfully refute the accuracy of breath test results through alternative evidentiary resources. Having found no Brady viola *640 tian, the court concluded that “the Due Process Clause of the Fourteenth Amendment does not require that law enforcement agencies preserve breath samples in order to introduce breath-analysis tests at trial” (supra, p_, p 2535).
It is true, as defendant argues, that despite the Supreme Court’s ruling in Trombetta, we are free to adopt greater due process safeguards than those imposed by the Federal Constitution (California v Trombetta, 467 US_,_, n 12,104 S Ct 2528, 2535, supra; Oregon v Hass, 420 US 714, 719 [1975]; People v Isaacson, 44 NY2d 511).[2] We find no persuasive reason, however, to depart from the standard set down in Trombetta in applying our own due process clause (NY Const, art I, § 6) to the facts of this case. Here, as in Trombetta, the possibility that a preserved breath sample would prove to be exculpatory appears remote. Breathalyzer equipment and procedures have long and consistently been recognized as reliable by the courts of this State (see, People v Gower, 42 NY2d 117; People v Hayes, 98 AD2d 824; People v Donaldson, 36 AD2d 37). And, significantly, the breath test performed in this case was administered by a qualified operator in accordance with required rules and regulations (see, 10 NYCRR part 59), on a machine which was twice inspected within several days of defendant’s arrest and certified as accurate.
Even if breath samples could be considered exculpatory, the defendant is not without “alternative means of demonstrating [his] innocence.” (California v Trombetta, supra, p_, p 2535.) As the Supreme Court noted in Trombetta, test accuracy can be impeached by various trial methods, including the introduction of extrinsic evidence demonstrating possible sources of machine malfunction and by cross-examination of the law enforcement officer who administered the breath test in order to show operator error. In the context of a prosecution under Vehicle and Traffic Law § 1192 (2), breath test results constitute powerful, but not conclusive evidence of guilt (see, People v Ippolito, 100 AD2d 734), and, contrary to defendant’s suggestion, the impeachment devices mentioned above remain available to a defendant charged under the statute.
*641 Since there is no indication in this record that the police were acting in bad faith by not preserving a sample of defendant’s breath, and since a breath sample would not have been exculpatory or material, notions of due process and fundamental fairness under New York law do not require that the results of defendant’s breath test be suppressed (see, People v Farrell, 58 NY2d 637 [ampoule used in administering breathalyzer test destroyed in accordance with routine practice; held breath test results admissible]; People v Briggs, 81 AD2d 1017 [blood sample “ ‘inadvertently lost or destroyed’ ”; held blood test results admissible]).
Defendant’s remaining argument, raised for the first time on appeal, that the failure to preserve a sample of his breath was a violation of the confrontation clause of the 6th Amendment, is without merit. As previously indicated, defendant may “confront” the test results and impugn their accuracy without resort to an additional breath sample.
Dudley, P. J., Hughes and Sandifer, JJ., concur.

. The instrument, in use throughout New York City, measures blood alcohol content by analyzing a known quantity of deep lung — alveolar — air. A more detailed description of the test methodology appears in the well-written opinion below (121 Misc 2d 483, n 3).

. Of the several State courts that have addressed the issue in the wake of Trombetta, none has seen fit to require, as a matter of State constitutional law, the preservation of breath samples (see, for example, State v Williams,_RI_, 480 A2d 1383 [Sup Ct, RI 1984]; Lovell v State, 283 Ark 425, 678 SW2d 318 [Sup Ct, Ark 1984]; State v Vernon, 218 Neb 539, 356 NW2d 887 [Sup Ct, Neb 1984]; City of Las Vegas v O’Donnell,_Nev_, 686 P2d 228 [Sup Ct, Nev 1984]; State v Plawchan, 453 So 2d 496 [Fla, 1st Cir, Dist Ct of Appeals 1984]; State v Garafola, 459 So 2d 1066 [Fla, 4th Cir, Dist Ct of Appeals 1984]).