OPINION OF THE COURT
Joseph Kevin McKay, J.
These cases have been consolidated only for the purpose of *826 hearing and deciding the defendants’ motions to preclude the use of the breathalyzer results at each trial, based on a lack of proof of the chemical composition of the ampoules from lot No. 0228 used for each defendant’s breathalyzer test.
Based on the record compiled in People v Serrano and People v Hosein (142 Misc 2d 1087 [Crim Ct, Kings County 1989]) (hereafter Serrano) and also considering the lengthy decision of the Manhattan Criminal Court in People v Pantaleo (NYLJ, Sept. 20, 1989, at 22, col 4) (Pantaleo II), I have concluded that the ampoule lot No. 0228 was prepared at Systems Innovation, Inc. (hereafter SII) in the same way as lots No. 0916 and No. 0917, by means of individual five-gallon glass jugs which were never combined at any point during the production or sampling process.[1]
I arrive at this finding without any direct testimony by any individual of exactly what procedure was followed in February 1988. It is based, instead, on strong and compelling inferences I draw from the record referred to above, which I believe are reasonably susceptible of only this interpretation.
The District Attorney has argued that lot No. 0916, because of its unusual size, presented a special production problem at SII which would not have affected the smaller ampoule lots later produced. This argument fails because it ignores all the circumstances which came to light during Serrano (supra) which led the court to conclude that for lots No. 0916 and No. 0917 the combination or single-vat method was a myth. Rather than being an exception at SII, I firmly believe that lot No. 0916 was the rule and that its unique size made it easier to uncover and expose SII’s faulty production and sampling procedures.
The key officer at SII in relevant times up to the present appears to be vice-president Maurice Dutton. He prepared two “affidavits,” submitted by the District Attorney for Serrano (supra) and the present lot No. 0228 cases. They are unconvincing. In refusing to testify in the Serrano hearing he said, *827 through the District Attorney, that he did not have sufficient personal knowledge. Nevertheless it appears that he has, behind the scenes, orchestrated SII’s defense by arranging for Michael Dugan and later William Feis to testify at different hearings on the identical issue in Rochester in People v Urquhart (Rochester City Ct, Jan. 23, 1989) (made part of the Serrano record) and Manhattan (Pantaleo II, supra). Their purpose was clearly to discredit the individual-jug method of production, as testified to by Lee Campbell, whose account was fully credited by Judge Kahn in Pantaleo II, and by me in Serrano. Not only were their individual accounts rejected as incredible, but one failed to corroborate the other. To illustrate, a strange late-night scene at SII was depicted by William Feis in Pantaleo II to have taken place in June 1986, supposedly witnessed only by Dugan, during which the mixing of the entire batch of lot No. 0916 was to have taken place. As ridiculous as this scene appeared on its face, it becomes even more incredible when one realizes that it was never even mentioned by Michael Dugan in his Urquhart testimony, despite the fact that numerous questions were put to him repeatedly and directly on the subject of when and how this mixing took place.
Lot No. 0917 was produced at SII throughout the latter part of 1987. Lot No. 0228 went into production in early 1988. SII has failed to demonstrate that their ampoule production methods were ever modified or changed for lot No. 0228, a burden which I believe the prosecution must be made to carry, given the state of this record. That SII stubbornly refuses to acknowledge the correctness of the court’s findings in Serrano (supra) and Pantaleo II (supra) does not change the facts or make SII’s version any more credible, in my view.
Therefore, in the absence of admissible records[2] or credible testimony, I find and conclude, as aforesaid, that the combination method was not used to produce ampoule lot No. 0228. It follows (see, People v Serrano, supra, at 1096) that the New York State laboratory certificate of analysis for that lot is not competent to prove the chemical composition of those ampoules.[3] Moreover, there is a total absence of any other direct evidence of the chemical composition and integrity of those *828 ampoules. Therefore, the prosecution must rely, as it seeks to do, on the simulator test to establish the admissibility and accuracy of the breathalyzer results (assuming it was performed properly in each lot No. 0228 case and assuming Feis is not called to testify at each trial). If the simulator test cannot establish the reliability of the actual test and indirectly satisfy the evidentiary foundation requirement regarding the ampoules, as set forth in People v Donaldson (36 AD2d 37 [4th Dept 1971]), People v Freeland (68 NY2d 699 [1986]), and People v Mertz (68 NY2d 136 [1986]), then the breathalyzer results will not be admissible at these trials.
I have found no convincing or binding legal authority for the proposition, which I called novel in Serrano (supra), urged again by the District Attorney in these lot No. 0228 cases, that the simulator test obviates the need for proof of the chemical composition of the ampoules.[4] Despite some occasional phrases in Court of Appeals opinions suggesting some future loosening of evidentiary standards in breathalyzer cases (see, e.g., People v Gower, 42 NY2d 117, 121 [1977]; People v Freeland, supra, at 701) the holdings of those cases and all others on point consistently have drawn a firmer line and required, at a minimum, proof that the chemicals used in the ampoules were proper and were mixed in the proper proportion. (See, People v Donaldson, supra; People v Gower, supra; People v Farrell, 58 NY2d 637 [1982]; People v Garneau, 120 AD2d 112 [4th Dept 1986]; People v Freeland, supra; People v Mertz, supra; People v Alvarez, 70 NY2d 375 [1987].) The deficiencies in the Freeland and Mertz prosecutions requiring reversals were in some ways more technical and less substantial than that presented here. The certificates were in improper form in Freeland and Mertz, whereas here the *829 ampoule certificate is rejected not based on a failure of form but because it is incompetent.
I am unable to conclude that this requirement is satisfied by proof of another traditional requirement regarding the simulator test, which has up to now been regarded merely as an additional verification of the proper functioning of the machine. In other words, the simulator test has been relied on only after the scientific integrity of the components has first been established.[5] Moreover, I have not been presented with a clear consensus of expert opinion that this test can be accepted instead of proof of the integrity of a necessary component, namely, the ampoules.[6]
Why then should the courts relax and revise traditional evidentiary standards for the admission of the breathalyzer results simply to accommodate a sloppy and deceitful manufacturer and a State prosecutor who, in my judgment, has failed to investigate adequately SII’s operation after so much time has elapsed since these problems were exposed? I hold that these standards should not be relaxed.
It follows that for each of the lot No. 0228[7] cases decided herein:
(1) The ampoule certificate of analysis is incompetent and inadmissible.
(2) Unless other, admissible, direct proof of the chemical composition of the ampoules is presented by the prosecution at any of these trials, such as the testimony of the mixer of the chemicals, the breathalyzer results will not be admitted into evidence. Unless the prosecutor makes a sufficient offer of *830 proof in accordance with this decision at the outset of any of these trials, no reference to the breathalyzer will be permitted and a trial order of dismissal for the Vehicle and Traffic Law § 1192 (2) count will be entered after the close of the People’s direct case.

. For the sake of this decision I adhere to the burden of proof I outlined in People v Serrano (142 Misc 2d 1087, 1091, 1092). I recognize that other courts have apportioned the relative burdens differently. I am satisfied, however, that with respect to a disputed document the proponent must bear the burden. Ultimately, the admissibility of the breathalyzer results depends upon whether a trier of fact could reasonably conclude that they are accurate based on various foundational elements. Nevertheless, I must rule as a matter of law on the admissibility of one of those elements, as I did in Serrano.

. The one exhibit submitted by the District Attorney on this motion I find also worthless. On its face, it is not a business record and lacks any semblance of reliability or authenticity.

. That part of William Feis’s testimony in People v Pantaleo (NYLJ, Sept. 20, 1989, at 22, col 4) about the formula he followed was uncontra *828 dieted and was accepted. Such testimony, if offered in person at the trial of any of these defendants — subject to cross-examination — would be welcome and would, I believe, meet the Donaldson admissibility standard for the ampoules. (People v Donaldson, 36 AD2d 37 [4th Dept 1971].) However, there are no shortcuts now available to the prosecution because SII failed to follow proper procedures to produce the ampoules or to create business records.

. The only decision brought to my attention to date so holding was an unpublished County Court case, People v Bevins (Ulster County Ct, June 14, 1989). But I find the Bevins court unpersuasive, relying, as it does, only on a misunderstood and misapplied quotation from People v Miekrantz (77 Misc 2d 892, 901 [Broome County Ct 1974]). (The Miekrantz holding itself is to the contrary.)

. It can be inferred that there was a simulator test done in People v Mertz (68 NY2d 136, 140), which was still insufficient to sustain the conviction.

. The parties declined the court’s invitation to present additional expert opinion testimony or to rely by stipulation on the experts presented in People v Pantaleo (NYLJ, Sept. 20,1989, at 22, col 4). I have previously held the expert opinion, such as it was in People v Serrano (142 Misc 2d 1041, 1097, n 16), to be insufficient for the prosecution on this point. I note here once again, as in Serrano, the concern that, given the lot production and labeling methods used at SII, one cannot be sure that the test ampoule and the reference ampoule — the relative translucence of which are compared in each breathalyzer test — came from the same batch.

. For any additional SII lot No. 0228 ampoule cases which come before me I will follow this decision, except that I continue to invite expert opinion evidence to be offered in an adversarial setting in support of alternative bases for proving the breathalyzer results.