OPINION OF THE COURT
Jeffrey Russell Werner, J.
Each of the defendants was charged, inter alia, with violation of Vehicle and Traffic Law § 1192 (2), driving with blood alcohol content of .10% or more, and § 1192 (3), driving while intoxicated. Based upon the accusatory instruments, supporting depositions and verified bills of particulars, each defendant’s driver’s license was suspended at arraignment pending prosecution in accordance with Vehicle and Traffic Law § 1193 (2) (e) (7). Now, prior to trial, each defendant moves to dismiss the Vehicle and Traffic Law misdemeanors, section 1192 (2) and (3), and the traffic infraction of section 1192 (1), driving while ability impaired, on the ground that the prior suspension pending prosecution was punishment in the constitutional sense and that the subsequent trial of the substantive charges is barred by the double jeopardy guarantee.
The court finds that suspension of their driver’s licenses pending prosecution bars prosecution of Vehicle and Traffic Law § 1192 (2), driving with blood alcohol content of .10% or more, by virtue of the Double Jeopardy Clause’s proscription against multiple punishments; and that prosecution of Vehicle and Traffic Law § 1192 (3), driving while intoxicated, and its lesser included offense of section 1192 (1), driving while ability impaired, are barred by virtue of the Double Jeopardy Clause’s *111 doctrine of collateral estoppel and CPL 40.40 (1), procedural double jeopardy.
DOUBLE JEOPARDY
New York Constitution, article I, § 6 protects defendants from being placed in double jeopardy. In Benton v Maryland (395 US 784), the United States Supreme Court in 1969 held that the Fifth Amendment guarantee against double jeopardy is enforceable against the States through the Fourteenth Amendment of the US Constitution.
That same day, in North Carolina v Pearce (395 US 711 [1969]), the Supreme Court stated (at 717) that the double jeopardy guarantee consists of three separate constitutional protections: "It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.”
Addressing the last protection, multiple punishments for the same offense (North Carolina v Pearce, supra, at 717-718), the Court referred to the controlling constitutional principle it had espoused in Ex parte Lang (18 Wall [85 US] 163, 168, 173):
" 'If there is anything settled in the jurisprudence of England and America, it is that no man can be twice lawfully punished for the same offence. And * * * there has never been any doubt of [this rule’s] entire and complete protection of the party when a second punishment is proposed in the same court, on the same facts, for the same statutory offense * * *
" '[T]he Constitution was designed as much to prevent the criminal from being twice punished for the same offense as from being twice tried for it’.”
MULTIPLE PUNISHMENTS
In United States v Halper (490 US 435 [1989]), the Supreme Court addressed the issue of whether and under what circumstances a civil penalty may constitute punishment for the purpose of the Double Jeopardy Clause.
Halper had been convicted of 65 counts of Medicare fraud and 16 counts of mail fraud and sentenced to two years’ imprisonment and a $5,000 fine. Thereafter, the government brought a civil action against Halper under the False Claims Act.
It being undisputed that Halper had previously been punished as the result of a criminal conviction and it being *112 undisputed that the civil proceeding and the prior criminal proceeding were based upon the same conduct, the single issue before the Supreme Court was "whether the statutory penalty authorized by the civil False Claims Act, under which Halper is subject to liability of $130,000 for false claims amounting to $585, constitutes a second 'punishment’ for the purpose of double jeopardy analysis.” (United States v Halper, supra, at 441.)
The Court then began to examine whether and under what circumstances a civil penalty may constitute punishment for the purpose of the Double Jeopardy Clause. It stated that a review of the statutory language, structure, and intent were appropriate in identifying the inherent nature of the proceeding as a general matter and for Sixth Amendment purposes, but that such an analysis "is not well suited to the context of the 'humane interests’ safeguarded by the Double Jeopardy Clause’s proscription of multiple punishments”. It continued: "This constitutional protection is intrinsically personal. Its violation can be identified only by assessing the character of the actual sanctions imposed on the individual by the machinery of the state.” (United States v Halper, supra, at 447.)
The Court held that in determining whether a particular civil sanction constitutes criminal punishment, it is the purposes actually served by the sanction in question and not the underlying nature of the proceeding giving rise to the sanction that must be evaluated, saying (United States v Halper, supra, at 447-448): "In making this assessment, the labels 'criminal’ and 'civil’ are not of paramount importance. It is commonly understood that civil proceedings may advance punitive as well as remedial goals, and, conversely, that both punitive and remedial goals may be served by criminal penalties. [United States ex rel. Marcus v Hess, 317 US 537, 551 (1943).] The notion of punishment, as we commonly understand it, cuts ¿cross the division between the civil and the criminal law, and for the purposes of assessing whether a given sanction constitutes multiple punishment barred by the Double Jeopardy Clause, we must follow the notion where it leads, Cf. Hicks v. Feiock, 485 U. S. 624, 631 (1988) ('[T]he labels affixed either to the proceedings or to the relief imposed * * * are not controlling and will not be allowed to defeat the applicable protections of federal constitutional law’). To that end, the determination whether a given civil sanction constitutes punishment in the relevant sense requires a particularized assessment of the penalty imposed and the purposes that the penalty may *113 fairly be said to serve. Simply put, a civil as well as a criminal sanction constitutes punishment when the sanction as applied in the individual case serves the goals of punishment.”
In other contexts, the opinion went on, the Supreme Court has recognized that punishment serves the twin aims of retribution and deterrence. (Kennedy v Mendoza-Martinez, 372 US 144, 168 [1963] [these are the "traditional aims of punishment”].) "Retribution and deterrence are not legitimate nonpunitive governmental objectives.” (Bell v Wolfish, 441 US 520, 539, n 20 [1979].) "From these premises”, the Court continued, "it follows that a civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment, as we have come to understand the term: Cf. Mendoza-Martinez, 372 U.S., at 169 (whether sanction appears excessive in relation to its non-punitive purpose is relevant to determination whether sanction is civil or criminal)”. (United States v Halper, supra, at 448.) Concluding, the Court said: "We therefore hold that under the Double Jeopardy Clause a defendant who already has been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not fairly be characterized as remedial, but only as a deterrent or retribution”. (United States v Halper, supra, at 448-449.)
In Austin v United States (509 US 602 [1993]), the defendant was indicted, pleaded guilty to one count of possessing cocaine with intent to distribute, and was sentenced to seven years’ imprisonment. Thereafter, the government filed an in rem action and was granted a forfeiture of Austin’s mobile home and auto body shop where small amounts of marihuana and cocaine and drug paraphernalia were found. Austin argued for reversal before the Supreme Court on the ground that the Excessive Fines Clause of the Eighth Amendment of the US Constitution applies to forfeitures of property. "The purpose of the Eighth Amendment, putting the Bail Clause to one side,” Austin stated, "was to limit the government’s power to punish. See Browning-Ferris [Industries v Kelco Disposal], 492 U.S., at 266-267, 275, 109 S.Ct., at 2916, 2919. The Cruel and Unusual Punishments Clause is self-evidently concerned with punishment. The Excessive Fines Clause limits the Government’s power to extract payments, whether in cash or kind, 'as punishment for some offense’. Id., at 265, 109 S.Ct., at 2915 (emphasis added). 'The notion of punishment, as we commonly understand it, cuts across the division between the civil and the criminal *114 law.’ United States v. Halper, 490 U.S. 435, 447-448, 109 S.Ct. 1892, 1901, 104 L.Ed.2d 487 (1989).” (Supra, at 609-610.)
Austin (supra) continued: "We need not exclude the possibility that a forfeiture serves remedial purposes to conclude that it is subject to the limitations of the Excessive Fines Clause. We, however, must determine that it can only be explained as serving in part to punish. We said in Halper that 'a civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment, as we have come to understand that term.’ 490 U.S., at 448” (Supra, at 610.) After review, the Court concluded "that forfeiture generally and statutory in rem forfeiture in particular historically have been understood, at least in part, as punishment.” (Supra, at 618.)
Finally, analyzing the particular statutory forfeiture provisions in question, Austin (supra) concluded that they constituted punishment. Among the reasons were that Congress has chosen to tie forfeiture directly to the commission of drug offenses, so that a conveyance is forfeitable if it is used or intended for use to facilitate the transportation of controlled substances and real property is forfeitable if it is used or intended for use to facilitate the commission of a drug-related crime.
Acknowledging that forfeiture of contraband may be characterized as remedial because it removes dangerous or illegal items from society (United States v One Assortment of 89 Firearms, 465 US 354, 364), the Court stated (Austin v United States, supra, at 621) it had previously refused to extend that reasoning to conveyances used to transport illegal liquor, noting that "[tjhere is nothing even remotely criminal in possessing an automobile.” (Plymouth Sedan v Pennsylvania, 380 US 693, 699 [1965].) Further acknowledging that the Court had upheld the forfeiture of goods in customs violations as a "reasonable form of liquidated damages” (One Lot Emerald Cut Stones v United States, 409 US 232, 237 [1972]), Austin found that "the dramatic variations in the value of conveyances and real property forfeitable under [the statute] undercut any similar argument” (at 621). The point, it said, had been made in United States v Ward (448 US 242, 254), that "the 'forfeiture of property [is] a penalty that ha[s] absolutely no correlation to any damages sustained by society or to the cost of enforcing the law.’ ” (Supra, at 621.)
*115 With the historical understanding of forfeiture as punishment, the clear focus of the statute on the culpability, of the owner, and the evidence that Congress understood the provisions as serving to deter and to punish, Austin (supra) concluded that forfeiture under the statute cannot serve solely a remedial purpose.
Then, in 1994, the Supreme Court in Department of Revenue of Montana v Kurth Ranch (511 US 767) addressed the issue of whether a tax on the possession of illegal drugs assessed after the State had imposed a criminal penalty for the same conduct may violate the constitutional prohibition against successive punishments for the same offense.
The defendants in Kurth Ranch (supra) were charged with conspiracy to possess and possession of drugs with intent to sell, entered into plea agreements, and were sentenced to either prison or suspended or deferred sentences. The County Attorney also filed a civil forfeiture action seeking recovery of cash and equipment used in the marihuana operation, which was settled for approximately $18,000 in cash and equipment. A third proceeding, initiated by the Montana Department of Revenue, involved the assessment of a new tax on dangerous drugs. It ultimately attempted to collect almost $900,000 in taxes on marihuana and marihuana derivative products, interest, and penalties. The Kurths commenced the fourth legal proceeding resulting from the raid on their farm, a petition for bankruptcy under chapter 11 of the Bankruptcy Code.
Relying in the main upon Halper (supra), the Bankruptcy Court rejected the State’s argument that the tax was not a penalty because it was designed to recover law enforcement costs, saying there was not " 'one scintilla of evidence as to cost of the * * * government programs or costs of law enforcement incurred to combat illegal drug activity’ ”, and found the assessment constituted a form of double jeopardy. (Department of Revenue of Montana v Kurth Ranch, supra, at 773-774.)
Never having specifically held that a tax violated the Double Jeopardy Clause (Department of Revenue of Montana v Kurth Ranch, supra, at 779), the Supreme Court in Kurth Ranch commenced its opinion on whether a tax may be characterized as punitive, with the following statement of the law (at 778): "Criminal fines, civil penalties, civil forfeitures and taxes [imposed upon illegal activities] all share certain features. They generate government revenues, impose fiscal burdens on individuals, and deter certain behavior. All of these sanctions are subject to constitutional constraints. A government may *116 not impose criminal fines without first establishing guilt by proof beyond a reasonable doubt. Cf. In re Winship, 397 U.S. 358 (1970). A defendant convicted and punished for an offense may not have a nonremedial civil penalty imposed against him for the same offense in a separate proceeding. Halper, supra. A civil forfeiture may violate the Eighth Amendment’s proscription against excessive fines. Austin v. United States, 509 U.S. 602 (1993).”
First noting that Montana could have collected its drug tax if it had not previously punished the taxpayer for the same offense or if it had assessed the tax in the proceeding that resulted in the conviction (Missouri v Hunter, 459 US 359, 368-369 [1983]), the sole issue in Kurth Ranch (supra), the Court said, was "whether the tax has punitive characteristics that subject it to the constraints of the Double Jeopardy Clause.” (Supra, at 778-779.) While fines, penalties, and forfeitures are easily characterized as sanctions, the Court said, "taxes are typically different because they are usually motivated by revenue-raising rather than punitive purposes. Yet at some point, an exaction labeled as a tax approaches punishment”. (Supra, at 779-780.)
The Court commenced its analysis by stating that neither a high rate of taxation nor an obvious deterrent purpose necessarily makes a tax a form of punishment. But this tax, it said, has distinguishing features from typical taxes. "First, this so-called tax is conditioned on the commission of a crime. That condition is 'significant of penal and prohibitory intent rather than the gathering of revenue.’ Moreover, the Court has relied on the absence of such a condition to support its conclusion that a particular federal tax was a civil rather than a criminal sanction. In this case, the tax assessment not only hinges on the commission of a crime, it also is exacted only after the taxpayer has been arrested for the precise conduct that gives rise to the tax obligation in the first place.” (Department of Revenue of Montana v Kurth Ranch, supra, at 781.)
Declaring that "[t]axes imposed upon illegal activities are fundamentally different from taxes with a pure revenue-raising purpose that are imposed despite their adverse effect on the taxed activity” (Department of Revenue of Montana v Kurth Ranch, supra, at 782), the Court found that, "[t]his drug tax is not the kind of remedial sanction that may follow the first punishment of a criminal offense. Instead, it is a second punishment within the contemplation of a constitutional *117 protection that has 'deep roots in our history and jurisprudence,’ Halper, 490 U.S., at 440, 109 S.Ct., at 1897, and therefore must be imposed during the first prosecution or not at all. The proceeding Montana initiated to collect a tax on the possession of drugs was the functional equivalent of a successive criminal prosecution that placed the Kurths in jeopardy a second time 'for the same offence.’ ” (Supra, at 784.)
SUSPENSION PENDING PROSECUTION
At arraignment, each defendant’s driver’s license was suspended pending prosecution pursuant to Vehicle and Traffic Law § 1193 (2) (e) (7), which in pertinent part reads: "A court shall suspend a driver’s license, pending prosecution, of any person charged with a violation of subdivision two or three of section eleven hundred ninety-two of this article who, at the time of arrest, is alleged to have had .10 of one percent or more by weight of alcohol in such driver’s blood as shown by chemical analysis of blood, breath, urine or saliva, made pursuant to subdivision two or three of section eleven hundred ninety-four of this article.”
The procedure for suspension at arraignment for the section requires the court, as it found in the instance of each of these defendants, to (1) find that the accusatory instrument, together with any supporting depositions which accompany it, provide reasonable cause to believe that the defendant committed the offense charged, and (2) that there exists reasonable cause to believe that the defendant operated a motor vehicle while having .10% or more by weight of alcohol in his or her blood.
SUSPENSION PENDING PROSECUTION CONSTITUTES DOUBLE JEOPARDY FOR SAME OFFENSE AS CRIMINAL CONDUCT
In order to determine whether the subsequent criminal prosecution of Vehicle and Traffic Law § 1192 (2) constitutes a multiple punishment in violation of the Double Jeopardy Clause, three elements must be examined. They are: (1) whether suspension pending prosecution constitutes punishment, (2) whether the civil forfeiture of driver’s license is for the same offense as the criminal conduct, and (3) whether the civil forfeiture proceeding and the criminal prosecution constitute the same or separate proceedings.
Halper (supra) has taught that the notion of punishment cuts across the division between the civil and the criminal law. A civil sanction that cannot fairly be said solely to serve a re *118 medial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment, as we have come to understand the term.
From Austin (supra), we learn that unless we are dealing with forfeitures of contraband to remove dangerous or illegal items from society, such as weapons, or forfeitures that can be shown to be a reasonable form of liquidated damages, a statute providing for a forfeiture is a penalty that has absolutely no correlation to any damages sustained by society or to the cost of enforcing the law. That the forfeiture serves remedial purposes is not conclusive; the determination that must be made is whether the forfeiture can only be explained in part to punish.
Here, as in Austin (supra), it makes sense to focus on the statute as a whole, rather than on the reasonableness of the economic impact of the respective defendants. The statute makes no provision for assessing the economic impact of license suspension pending prosecution on each defendant, and the records here do not disclose the economic impact on them except to the extent that defendant Uzquiano was unable to pursue his employment, that of driving a truck, for at least 30 days and at most until the conclusion of the criminal prosecution.
Vehicle and Traffic Law § 1193 (2) (e) (7), suspension pending prosecution, requires "reasonable cause to believe” — that which the fact finder must determine beyond a reasonable doubt in the criminal prosecution — violation of Vehicle and Traffic Law § 1192 (2), driving with blood alcohol content of .10% or more. The Legislature, in the case of the suspension pending prosecution statute, as was the case in Austin (supra), has chosen to tie forfeiture directly to the commission of the crime. Proof for one — albeit a different standard of proof, although each a criminal standard of proof — is proof of the other. For the very same conduct, defendants are subjected twice to judicial sanction. Furthermore, the legislative memorandum in support of the suspension pending prosecution statute states that drunk drivers fear the loss of their license more than jail terms, manifesting the intent that the forfeiture provide swifter and ostensibly more serious sanction than the criminal prosecution.
While the remedial effect of removing possibly dangerous drivers from operating a motor vehicle pending prosecution for those found to be operating with .10% or more of blood alcohol cannot be denied and its deterrent purpose does not necessarily make the sanction a form of punishment, as was the case *119 both in Austin and Kurth Ranch (supra) the sanction is solely conditional upon the commission of a crime. That condition, as Kurth Ranch tells us, is significant of penal and prohibitory intent rather than civil sanction. Absent the sanctionable criminal conduct there would be no civil sanction and, only after an arrest for the precise conduct being civilly sanctioned, is there a civil sanction.
The civil forfeiture of a driver’s license pending prosecution under the statute cannot be explained solely as remedial, but can only be explained in part to punish. In United States v Ursery (59 F3d 568, 573-574 [6th Cir 1995], cert granted — US —, 116 S Ct 762), where a civil forfeiture preceded the criminal conviction, the court concluded, "We find that the forfeiture and conviction are punishment for the same offense because the forfeiture necessarily requires proof of the criminal offense.” Even though the standard of proof is more easily met in the civil action, the fact remains that the government cannot confiscate Ursery’s residence without a showing that he was manufacturing marihuana. The criminal offense is in essence subsumed by the forfeiture judgment and thus does not require an element of proof that is not required for the forfeiture action. (See, Oakes v United States, 872 F Supp 817, 824 [ED Wash 1994] [reaching this very conclusion]; see also, United States v Tilley, 18 F3d 295, 297-298 [5th Cir] ["if the prior civil forfeiture proceeding, which was predicated on the same drug trafficking offenses as charged in the indictment, constituted a 'punishment’, the Double Jeopardy Clause will bar the pending criminal trial”], cert denied 511 US 1043 [1994]; United States v One 1978 Piper Cherokee Aircraft, 37 F3d 489, 495 [9th Cir 1994] ["unless the civil forfeiture under § 881 (a) (4) can be predicated upon some offense other than those for which McCullough has already been tried, the civil forfeiture is barred by the Double Jeopardy Clause”].)
The court is familiar with a number of court decisions of other States upholding their State statutes providing for suspension pending prosecution. (See, e.g., City of Orem v Crandall, 760 P2d 920 [Utah 1988]; State v Nichols, 169 Ariz 409, 819 P2d 995 [1991]; Ellis v Pierce, 230 Cal App 3d 1557, 282 Cal Rptr 93 [1991]; Freeman v State, 611 So 2d 1260 [Fla 1992].) These cases express the common thread that administrative suspension pending prosecution is remedial and not punitive. They further take the position that was succinctly stated in Johnson v State (95 Md App 561, 573, 622 A2d 199, 205 [1993]), that "Appellant was deprived of a valuable right when the *120 administrative judge issued him a restricted license. He was not, however, subject to criminal punishment for the same offense under the Double Jeopardy Clause.”
The suspensions pending prosecution which are the subject of this decision clearly are not administrative in terms of the separation of powers doctrines of both the New York and United States Constitutions. Undoubtedly these suspensions were, rather than administratively imposed by the executive branch, judicially conducted and judicially imposed and clearly jeopardy, in the context of the Double Jeopardy Clause, attached. These State court decisions, together with the decision of the Supreme Court of Vermont in State v Strong (158 Vt 56, 605 A2d 510 [1992]), in which the license suspension pending prosecution determination and the subsequent criminal penalty concededly resulted from the same conduct, and both proceedings were separately conducted by the court and found not to be violative of the Double Jeopardy Clause, cannot, in view of the subsequent holdings in Austin and Kurth Ranch (supra), be considered reliable precedent.
In the context of multiple punishments, the Supreme Court has concluded that where the two offenses for which the defendant is punished cannot survive the "same-elements” test, the double jeopardy bar applies. "The same-elements test, sometimes referred to as the 'Blockburger’ test, inquires whether each offense contains an element not contained in the other; if not, they are the 'same offence’ and double jeopardy bars additional punishment and successive prosecution.” (United States v Dixon, 509 US 688, 696 [1993].) Only when the "legislature specifically authorizes cumulative punishment under two statutes”, even though both statutes prohibit the "same” conduct enunciated in Blockburger v United States (284 US 299 [1932]), then the Double Jeopardy Clause does not preclude the imposition, in a single trial, of the cumulative punishment. (Missouri o Hunter, supra, at 368-369.)
While the precise holding in Halper (supra) was "that 'under the Double Jeopardy Clause a defendant who already has been punished in a criminal prosecution may not be subjected to an additional civil sanction’ if the civil sanction is punitive”, if the "civil sanction may fairly be characterized 'only as a deterrent or retribution’ * * * then its exaction before imposition of criminal punishment should have the same double jeopardy effect as exaction afterwards.” (United States v Schloss & Co., 724 F Supp 1123, 1126 [SD NY 1989], citing Jeffers v United *121 States, 432 US 137, 151 [1977] ["trial on a greater offense after conviction on a lesser ordinarily is just as objectionable under the Double Jeopardy Clause as the reverse order of proceeding”].) In separate proceedings, jeopardy in the context of the civil forfeiture attaches once the final judgment of forfeiture is entered. (United States v Tamez, 881 F Supp 460, 465 [ED Wash 1995].)
Addressing a forfeiture action and a criminal prosecution arising from the same conduct pursued separately in a civil and in a criminal action, the Ninth Circuit Court of Appeals found, in United States v $405,089.23 US Currency (33 F3d 1210, 1216 [9th Cir 1994], cert granted — US —, 116 S Ct 762) that, "A forfeiture case and a criminal prosecution would constitute the same proceeding only if they were brought in the same indictment and tried at the same time.” The Seventh Circuit Court of Appeals, in United States v Torres (28 F3d 1463 [7th Cir 1994]), was in accord, rejecting a contrary finding by two other courts of appeal decided before Kurth Ranch (United States v Millan, 2 F3d 17, 20 [2d Cir 1993]; United States v One Single Family Residence, 13 F3d 1493, 1499 [11th Cir 1994]), saying (at 1465):
"But if * * * Kurth Ranch holds a civil proceeding to collect a monetary penalty for crime counts as an independent 'jeopardy,’ it does not require much imagination to see the problem. Civil and criminal proceedings are not only docketed separately but also tried separately, and under the double jeopardy clause separate trials are anathema.
"Suppose the civil forfeiture gets to trial first. The United States will try to show that the money was used in an illegal drug transaction. 21 U.S.C. § 881(a)(6). At the beginning of the hearing, when evidence is first presented to the trier of fact in a proceeding seeking to impose a penalty for crime, jeopardy 'attaches.’ See Crist v Bretz, 437 U.S. 28, 32-36, 98 S.Ct. 2156, 2159-61, 57 L.Ed.2d 24 (1978). At the end of the proceeding, the trier of fact makes appropriate findings and either forfeits the property or concludes that the claimant didn’t do it or has some statutory defense. Come the criminal trial, the accused can plead former jeopardy — former conviction (and punishment) on the one hand, former acquittal on the other. The point of [Ohio v] Johnson, [467 US 493 (1984);] [Missouri v] Hunter, [supra] and Albernaz [v United States, 450 US 333 (1981)] is that cumulative punishments imposed at the end of a single trial do not violate a constitutional rule limiting the number of times the accused must be put to his defense for the *122 same crime. Separate administrative and criminal proceedings can lead to two trials, each of which produces a punishment for a single offense. Two trials, even if close in time, are still double jeopardy.”
With a single proceeding, there is no double jeopardy problem, and with all governmental remedies being considered in the same case, the Sentencing Judge is able to take the forfeiture into account in deciding the criminal sanction. (United States v McCaslin, 863 F Supp 1299, 1307 [WD Wash 1994].)
While the civil forfeiture proceeding and the criminal prosecution in the present cases each clearly commences with the arrest and proceeds simultaneously to the criminal arraignment, the separate forfeiture action then proceeds to a judicial finding of fact whether there is reasonable cause to believe that the defendant committed Vehicle and Traffic Law § 1192 (2), upon which the defendant is entitled to rebut the finding.
The civil forfeiture proceeding is then concluded and the criminal prosecution proceeding continues with discovery, motions, pretrial evidence hearings, and trial by jury on the very same factual issue which was the result of the civil forfeiture judgment — violation of Vehicle and Traffic Law § 1192 (2), driving with .10% or more of alcohol. The court therefore finds that suspension pending prosecution pursuant to Vehicle and Traffic Law § 1193 (2) (e) (7) constitutes punishment, the civil forfeiture of a driver’s license is for the same offense as the criminal conduct, violation of Vehicle and Traffic Law § 1192 (2), driving with .10% or more of alcohol, and the civil forfeiture proceeding and the criminal prosecution constitute separate proceedings. Accordingly, as to each of the defendants, the criminal prosecution of Vehicle and Traffic Law § 1192 (2) is barred by the punishment imposed in the civil forfeiture of driver’s license for violation of Vehicle and Traffic Law § 1192 (2).
DOUBLE JEOPARDY FOR VEHICLE AND TRAFFIC LAW § 1192 (2) ALSO IS DOUBLE JEOPARDY FOR VEHICLE AND TRAFFIC LAW § 1192 (3)
The "same-elements” or "Blockburger” test inquires whether each offense contains an element not contained in the other; if not, they are the "same offence” within the Clause’s meaning and double jeopardy bars subsequent punishment or prosecution. (United States v Dixon, supra.)
Vehicle and Traffic Law § 1192 (2), driving with .10% or more blood alcohol content, and Vehicle and Traffic Law § 1192 (3), *123 driving while intoxicated, are separate and distinct misdemeanors. Vehicle and Traffic Law § 1192 (2) is a legislatively defined intermediate degree of intoxication by a mathematical formula (People v Schmidt, 124 Misc 2d 102 [Crim Ct, NY County 1984]). A violation of section 1192 (2) is only established if the trier of fact concludes that the chemical test shows a blood alcohol content of at least .10%. (People v Mertz, 68 NY2d 136, 146 [1986].) Vehicle and Traffic Law § 1192 (3), on the other hand, defines the misdemeanor of driving while intoxicated as, "No person shall operate a motor vehicle while in an intoxicated condition”. In People v Cruz (48 NY2d 419, 428 [1979]), the Court of Appeals defined driving while intoxicated as follows: "In sum, intoxication is a greater degree of impairment which is reached when the driver has voluntarily consumed alcohol to the extent that he is incapable of employing the physical and mental abilities which he is expected to possess in order to operate a vehicle as a reasonable and prudent driver.”
Driving while impaired, Vehicle and Traffic Law § 1192 (1), is a traffic infraction and is defined as where a "defendant has actually impaired [by the consumption of alcohol], to any extent, the physical and mental abilities which he is expected to possess in order to operate a [motor] vehicle as a reasonable and prudent driver.” (People v Cruz, supra, at 427.) The infraction of section 1192 (1), driving while impaired, is a lesser included offense of section 1192 (3), driving while intoxicated, the only difference being the degree of impairment. (People v Cruz, supra, at 427-428.)
The issue then is not that section 1192 (2) and section 1192 (3) are the same offense, for they are not because they contain separate elements, but whether a rational trier of fact, based upon evidence not already presented to prove violation of section 1192 (2) which is barred by double jeopardy, can find on the remaining evidence that these defendants are guilty of section 1192 (3), or the lesser included offense of section 1192 (1).
Proof of section 1192 (2) requires evidence of .10% or more blood alcohol content "together with evidence of one or more of defendant’s deportment, speech, stability and the odor of his or her breath.” (People v Mertz, supra, at 146.)
The basis of the suspension of the driver’s licenses pending prosecution for each of the five defendants was the accusatory instrument and the combined supporting deposition and verified bill of particulars.
Discovery now is complete for all five defendants and no additional facts (except statements) are disclosed therein or in po *124 lice incident reports that would supplement the supporting depositions and verified bills of particulars.
In determining at the arraignment that there was reasonable cause to believe the defendants violated section 1192 (2), everything contained in the supporting depositions and verified bills of particulars was considered by the court. No specific element of evidence was independently advanced by testimony or separate affidavit at any of the defendants’ arraignments to suspend pending prosecution. Therefore, the court considered all evidence advanced in the supporting depositions and verified bill of particulars.
In Schiro v Farley (510 US 222, 232-233 [1994]), the Supreme Court said:
"In Ashe v Swenson, 397 U.S. 436 (1970), we held that the Double Jeopardy Clause incorporates the doctrine of collateral estoppel in criminal proceedings. See also, Dowling v. United States, 493 U.S. 342, 347 (1990). Collateral estoppel, or, in modern usage, issue preclusion, 'means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.’ Ashe, 397 U.S., at 443 * * *
" 'Issue preclusion attaches only to determinations that were necessary to support the judgment entered in the first action’ * * * The burden is 'on the defendant to demonstrate that the issue whose relitigation he seeks to foreclose was actually decided in the first proceeding.’ ”
In Schiro (supra) the Court then examined the trial record. That information, of course, is readily available to the court here, since when it suspended the driver’s licenses pending prosecution it took all the evidence set forth in the supporting depositions and verified bills of particulars into account. Even if only one corroborative item of evidence was necessary for this court to determine reasonable cause to believe the defendants operated a motor vehicle with .10% or more blood alcohol content, it is impossible to now select which additional items of evidence would have been sufficient to constitute the additional corroborative element for proof of violation of section 1192 (2) required by People v Mertz (supra) and preclude the fact finder at the trial of the criminal charges from considering that one item of evidence. Therefore, all evidence set forth in the supporting depositions and verified bills of particulars having been considered at the arraignment and *125 were necessary to support the judgment and penalty of suspension pending prosecution, the prosecution is collaterally estopped from using that evidence during the forthcoming trials.
Since the prosecution is precluded from using evidence of blood alcohol content and evidence set forth in the supporting depositions and bills of particulars, it must be determined what other evidence might be available to prove section 1192 (3), driving while intoxicated, or its lesser included offense, section 1192 (1), driving while ability impaired. There has been no disclosure that expert testimony (except perhaps the police officer’s opinion which would be based upon the evidence set forth in the supporting depositions and verified bills of particulars which, as we have said, is precluded) may be available. There are, however, in each case, written notices of precustodial or custodial conversations with and statements of the defendants, or of both, pursuant to CPL 710.30.
In the cases of defendants Ferguson, Orlando, and Koliner, pretrial evidentiary hearings have been held and, in each instance, the precustodial statements have been found to be admissible while in the instances of defendants Ferguson and Orlando the custodial statements have been found to be admissible in evidence. Assuming for this analysis that defendants Uzquiano’s and Schliphack’s precustodial and custodial statements will be admissible at the forthcoming trials, the court must determine whether the statements combined with defendants’ operation of a motor vehicle is sufficient to convict of driving while intoxicated or driving while impaired.
The statements consist of each defendant admitting they were driving as well as drinking alcoholic beverages.
Evidence other than the results of a chemical test generally introduced to prove driving while intoxicated are the number of drinks consumed, the method of driving (such as swerving and crossing the solid double center line), physical appearance and conduct (such as bloodshot eyes, slurred speech, disorientation, and unsteady gait), odor of breath, failure to pass a screening test, and refusal to take a blood test. (See, People v Mertz, supra; People v Schools, 122 AD2d 502 [3d Dept 1986]; People v Rollins, 118 AD2d 949 [3d Dept 1986]; People v Ottomanelli, 107 AD2d 212 [2d Dept 1985].) But for the statements, the other evidence is foreclosed from use in the criminal trial, having been the foundation for the civil forfeiture (including the arresting officer’s testimony based upon the other proscribed evidence).
*126 Yet there is no evidence available for the prosecution to show that the defendants were both intoxicated and driving at the same time. In order to prove the crime of driving while intoxicated, "intoxication and operation must be simultaneous or there is no crime.” (People v Strauss, 260 App Div 880, 881 [2d Dept 1940].) A rational trier of fact cannot, therefore, based upon the evidence that has not been precluded by the civil forfeiture judgment, prove the defendants guilty of section 1192 (3), driving while intoxicated, or the lesser included offense of section 1192 (1), driving while impaired, and the criminal prosecution of these charges is barred by the doctrine of collateral estoppel incorporated in the Double Jeopardy Clause.
Furthermore, the court finds that the criminal prosecution of section 1192 (3) and section 1192 (1) is barred by the compulsory joinder or procedural double jeopardy provision of CPL 40.40 (1). That section, in pertinent part, prohibits a separate prosecution of joinable offenses that arise out of the same transaction and involve different elements " ' "under circumstances wherein no violation of the double jeopardy principle can validly be maintained but the equities nevertheless seem to preclude separate prosecutions” ’ ”. (People v Ferguson, 162 Misc 2d 187, 189.) See, for example, this court’s decision in People v Ferguson, 162 Misc 2d 187, supra) which found no procedural double jeopardy based on other facts.